UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **PAULA F. CHARLIE** | **CASE NO. 2:21-CV-00715** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **MOBILE MODULAR MANAGEMENT CORP., ET AL.** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 42] filed by Defendant Mobile Modular Management Corporation ("MMM") seeking to dismiss all claims made against it by Plaintiff Paula F. Charlie ("Charlie"). Charlie filed an opposition to MMM's motion [Doc. No. 47], and MMM filed a reply [Doc. No. 51].

For the following reasons, MMM's Motion for Summary Judgment [Doc. No. 42] is **GRANTED**.

### I.   BACKGROUND AND PROCEDURAL HISTORY

On March 17, 2020, Charlie filed suit in the 14th Judicial District Court for negligence against Sasol Chemicals, LLC ("Sasol"), Mobile Modular Management Corporation ("MMM"), and McGrath Rent Corporation ("McGrath").[1] The defendants subsequently removed the case to this Court on March 17, 2021. In her petition, Charlie asserts that each defendant is liable for negligence in the installation, maintenance, operation, and control of a Blast Resistant Module ("BRM") that allegedly caused Charlie personal injuries.[2] In its Motion for Summary Judgment,

---

[1] Sasol (referred to as "the Sasol entities," or as "SCNA" and "SCUSA") has since been dismissed from the suit. *See* [Doc. Nos. 36 and 37]. McGrath has similarly been dismissed. *See* [Doc. Nos. 55 and 56].
[2] [Doc. No. 42-3 at pp.1–2].

MMM asserts that Charlie's negligence claim fails because MMM did not owe a duty to Charlie. and no action or inaction by MMM was the cause-in-fact of Charlie's injuries.[3]

This suit arises out of an incident that occurred at the site of Sasol's new chemical complex in Westlake, Louisiana.[4] Sasol, as operator of the complex, contracted with several companies to complete construction of the project.[5] One of these contracts was with TRS Staffing Solutions, Inc. ("TRS"), which provided personnel and services for the project.[6] At the time of the incident, Charlie was a Senior Administrator working for TRS at the site of the new complex.[7]

On April 10, 2019, Charlie was stationed in a BRM located inside Gate No. 5 on the complex's site.[8] Charlie alleges that, as she exited the module, she placed her hand on the frame of the door, and as she did so, "suddenly and without warning, the 500lb door, which was supposed to have a soft close, abruptly shut on [Charlie's] left hand."[9] As a result, Charlie sustained injuries to her left hand.[10]

Prior to this incident, MMM entered into a Lease Agreement with Sasol in September of 2018 for the placement of several BRM's at the Westlake complex.[11] According to MMM, the Lease did not impose upon MMM a contractual obligation to inspect or maintain the BRM's.[12] MMM asserts that it "would only provide service to the BRM's if called to do so by Sasol."[13] And, with respect to the BRM at issue here, MMM claims that it "did not receive any calls for service

---

[3] [Id. at pp.2–3].
[4] [Doc. No. 31-1 at p.2].
[5] [Id.].
[6] [Id.].
[7] [Id. at p.3].
[8] [Doc. No. 1-2 at ¶4].
[9] [Id.].
[10] [Id. at ¶8].
[11] [Doc. No. 42-2 at p.1].
[12] [Doc. No. 42-3 at p.2].
[13] [Id.].

on the subject BRM from the date the BRM was placed on site until [MMM] received notice of the subject accident."[14]

In its Motion for Summary Judgment, MMM argues that, without a contractual obligation to inspect and/or maintain the BRM's, MMM did not owe a duty to Charlie in this case.[15] Because no one from Sasol contacted MMM about an issue with the BRM, MMM argues that it "never had any knowledge of any alleged condition regarding the BRM door" and thus could not owe a duty to Charlie.[16] Further, even if Charlie could establish the duty element of her negligence claim, MMM asserts that no action or inaction by it was a cause-in-fact of Charlie's alleged damages.[17]

In response, Charlie argues that, prior to the accident on April 10, 2019, she was never warned of any risk involved in placing her hand in the door of the BRM.[18] Because MMM had knowledge of the risks involved in using the heavy BRM door, but failed to warn all employees at the Westlake complex, Charlie assert that MMM "absolutely owed a duty" here.[19] Further, Charlie asserts that MMM was clearly "responsible for repairing and adjusting [the BRM] blast doors" based on the Lease Agreement.[20] Charlie did not address the cause-in-fact argument in her opposition.

In reply, MMM asserts that, because this is a negligence action and not one under the Louisiana Product Liability Act ("LPLA"), MMM "does not have the generalized duty to warn which the LPLA imposes upon the manufacturer of a product."[21] MMM argues that the Lease Agreement, which could be the only basis for a duty imposed on a manufacturer like MMM, is

---

[14] [Id.].
[15] [Id. at pp.2–3].
[16] [Id. at p.4].
[17] [Id. at p.3].
[18] [Doc. No. 47 at p.3].
[19] [Id. at p.4].
[20] [Id.].
[21] [Doc. No. 51 at p.2].

devoid of any requirement that MMM "personally warn every employee of every contractor in the Sasol facility of the potential danger of not removing your hand from a door jamb as the BRM door is closing."[22]

The issues are briefed, and the Court is now prepared to issue a ruling.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) states:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted).; *see also* Fed. R. Civ. P. 56(c)(1).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337,

---

[22] [Id.].

343 (5th Cir. 2007) (*citing Anderson*, 477 U.S. at 248). However, in evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *See Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted).

### B. Analysis

In its Motion for Summary Judgment, MMM first argues that it does not owe a duty to Charlie with respect to the BRM that allegedly caused her damages.[23] Charlie responds that MMM had "a duty to warn and take reasonable steps to eliminate the risk" that the heavy BRM door posed to employees like Charlie.[24]

Under Louisiana law, "[n]egligence claims are examined using a duty/risk analysis." *Fruge v. ONOB, Inc.*, 32 So.3d 1115, 1118 (La. App. 3 Cir. 3/10/10). Thus, a negligence claim requires the plaintiff to prove each of the following elements: "(1) the defendant's conduct was cause in fact of the plaintiff's injuries; (2) the defendant had a duty to conform conduct to a specific standard; (3) the defendant breached that duty; (4) the defendant's conduct was the legal cause of plaintiff's injuries; and (5) plaintiff sustained actual damages." *Id.* "The threshold issue in any negligence action is whether the defendant owed a duty to the plaintiff." *George v. ABC Insurance, Co.*, No. 2022-CA-0148, 2022 WL 14749102, at *8 (La. App. 4 Cir. 10/26/22). "Whether the defendant owed the plaintiff a duty is a legal question for the court to decide." *Jones v. Stewart*, 203 So.3d 384, 390 (La. App. 4 Cir. 10/5/16), *writs denied*, 2016-1967, 2016-1962, 2016-1968. "Absent a duty to the plaintiff, there can be no actionable negligence and, hence, no liability." *Id.*

---

[23] [Doc. No. 42-3 at p.4].
[24] [Doc. No. 47 at p.8].

This Court agrees with MMM that Charlie cannot establish the duty element of her negligence claim. First, this Court agrees with MMM that the Lease Agreement does not impose a duty to inspect and/or maintain the BRM's without prior notice.[25] MMM asserts that it did not receive notice of an issue with this specific BRM before Charlie's incident.[26] Because Sasol did not give notice to MMM of the need for a repair, this Court finds that MMM owed no duty to Charlie, as MMM "cannot be obligated to make repairs of which it is completely unaware."[27]

Additionally, while Charlie argues that "Unit No. 5's door, along with many others, was often broken and causing an unreasonable risk of harm to its occupants upon entering and existing the unit," such testimony does not impose a duty on MMM to repair the BRM at issue here.[28] Although Charlie claimed she may have seen MMM employees repairing BRM doors during the course of her employment at the Westlake complex, Charlie has not introduced any evidence that MMM knew about the issue with Unit No. 5's door specifically before she was injured.[29] Nor has Charlie affirmatively produced evidence that MMM knew there was a need for any repairs on any of the thirty-nine BRM's at the complex; rather, Charlie merely "supposed" that Sasol called the vendor when reports were filed by employees about the BRM's.[30] Instead, Charlie highlights a string of emails with MMM after-the-fact, showing that MMM generally knew that the doors on the BRM's had potential "pinch points" that may pose a risk to those who use the heavy doors.[31] These emails, even if they constitute competent summary judgment evidence, cannot establish prior knowledge on behalf of MMM of an issue requiring repair in the specific BRM that caused Charlie harm.

---

[25] [Doc. No. 42-3 at p.5]; Ex. A, Declaration of Paul Crabtree at ¶4; [Doc. No. 42-4 at p.6].
[26] [Doc. No. 42-3 at p.6].
[27] [Id.].
[28] [Doc. No. 47 at p.4].
[29] [Id. at p.5].
[30] [Doc. No. 51 at p.3].
[31] [Id. at pp.5–6].

And as MMM points out, this case is one for simple negligence, not liability under the LPLA; thus, if Charlie believes a defect exists in the BRM doors in the form of a "pinch point," she has simply brought the wrong claim.[32] This Court declines to impose a duty upon manufacturers like MMM to warn unknown third parties about all potential risks of leased equipment—and notably, Charlie does not provide case law establishing that such a duty to warn exists.[33] Thus, Charlie has failed to articulate a duty that MMM, as the manufacturer of the BRM, owed to Charlie, an employee of TRS. MMM is thus entitled to judgment as a matter of law on Charlie's negligence claims.

### III.    CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that MMM's Motion for Summary Judgment [Doc. No. 42] is hereby **GRANTED**. All claims against MMM are hereby **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 24th day of April, 2023.



Terry A. Doughty
United States District Judge

---

[32] [Id. at p.2].
[33] [Id. at p.3].